# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**IVORY A. ROBERSON**

**VERSUS**

**COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION**

**CIVIL ACTION**

**NO. 17-1322-EWD
(CONSENT)**

## RULING AND ORDER

Plaintiff Ivory A. Roberson, Jr. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for supplemental security income ("SSI").[1] Plaintiff filed a Memorandum in Support of his appeal.[2] The Commissioner filed an Opposition Memorandum,[3] to which Plaintiff filed his Reply.[4]

Based on the applicable standard of review under § 405(g) and the analysis which follows, the Court **AFFIRMS**[5] the Commissioner's decision and **DISMISSES** Plaintiff's appeal.

## I. Procedural History

Plaintiff filed an application for SSI[6] alleging disability due to "heart problems" and a "learning disability."[7] Plaintiff alleges his disabilities began at his birth on May 18, 1994.[8]

---

[1] *See* AR pp. 172-177 (application for SSI) and AR pp. 1-6 (Notice of Appeals Council Action). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)], p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."

[2] R. Doc. 12.

[3] R. Doc. 14.

[4] R. Doc. 17.

[5] The parties consented to proceed before the undersigned United States Magistrate Judge, R. Doc. 9, and on November 16, 2017, an Order of Reference was entered by the District Judge referring this matter to conduct "all further proceedings and the entry of judgment in accordance with 28 USC 636(c)…." R. Doc. 10.

[6] AR pp. 172-177.

[7] *See* AR p. 83.

[8] AR pp. 46, 50, 172. According to the administrative record, Plaintiff previously received SSI benefits from his birth until on or about January 1, 2013, when they apparently ceased due to an Age 18 Redetermination. AR pp. 27. The ALJ noted that a February 6, 2013 Initial Determination and a November 22, 2013 Reconsideration Determination

Plaintiff's claim was initially denied on January 23, 2015.[9]  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[10]  Hearings were held on September 30, 2015 and January 4, 2016 before the ALJ.[11]  Plaintiff, represented by counsel, testified at both hearings.[12]

On February 2, 2016, the ALJ issued a Notice of Unfavorable Decision.[13]  Thereafter, Plaintiff requested review by the Appeals Council.[14]  On September 1, 2017, the Appeals Council denied Plaintiff's request for review.[15]  On October 23, 2017, Plaintiff filed his Complaint in this Court seeking review of the Commissioner's decision.[16]  Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review, and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[17]

## II.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[18]  If the Commissioner fails to apply the correct legal

---

both found the cessation of these benefits appropriate.  AR pp. 27, 84, 190.  The ALJ further noted that Plaintiff did not appeal those determinations within the required appeals period, which rendered them final and not subject to re-opening.  AR p. 27 *citing* 20 C.F.R. § 416.1481.  Further, the ALJ held that there was no basis for re-opening those determinations under the regulations governing administrative finality or pursuant to Social Security Ruling 91-5p after his review of those determinations.  AR p. 27.

[9] AR pp. 100-103.
[10] AR pp. 106-108.
[11] AR pp. 41-81.
[12] AR pp. 41-81.
[13] AR pp. 24-40.
[14] AR pp. 170-171.
[15] AR pp. 1-6.
[16] R. Doc. 1.
[17] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.  The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.  You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").
[18] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001), *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[19]

## III.     The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[20]  The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[21]  In the five-step sequence used to evaluate claims, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and (5) the impairment(s) prevents the claimant from doing any other work.[22]

The burden rests upon the claimant to prove disability throughout the first four steps of this five-step process.[23]  If the claimant successfully proves the first four steps, then the burden shifts to the Commissioner to prove the fifth step, which is that the claimant is capable of performing other work considering the claimant's residual functional capacity ("RFC"), age, education and past work experience.[24]  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.[25]

---

[19] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) and *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).
[20] 20 C.F.R. §§ 404.1505; 416.905.
[21] 20 C.F.R. §§ 404.1520; 416.920.
[22] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).
[23] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[24] 20 C.F.R § 404.1520(g)(1).
[25] *Muse*, 925 F.2d at 789.

Here, the ALJ determined that Plaintiff's learning disorder and anxiety were not severe impairments,[26] but that Plaintiff's post-surgically repaired Tetralogy of Fallot[27] was a severe impairment;[28] that Plaintiff did not meet the Listing under section 12.05 for mental retardation;[29] and that Plaintiff had the RFC to "perform the full range of sedentary work as defined in 20 C.F.R. 416.967(a)" and "to perform sedentary exertional activity."[30] Based on an RFC for the full range of sedentary work, the ALJ determined that a finding of "not disabled" was directed by Medical Vocational Rule 201.27.[31]

## IV. Plaintiff's Allegations of Error

First, Plaintiff argues that the ALJ erred in failing to find that Plaintiff's learning disorder is not "severe" at step two of the sequential evaluation process.[32] Second, Plaintiff argues that the ALJ erred in failing to find that Plaintiff's learning disorder meets the requirements of 20 C.F.R. Chap. III, Pt. 404, Subpt. P, app. 1, Listing 12.05C ("Listing 12.05C") at step three of the sequential

---

[26] AR pp. 29-32.  Anxiety was not initially identified by Plaintiff as an impairment.  AR p. 194.

[27] According to the Centers for Disease Prevention and Control, Tetralogy of Fallot is a birth defect that affects normal blood flow through the heart and is made up of the following four defects of the heart and its blood vessels: (1) a hole in the wall between the two lower chambers—or ventricles—of the heart. This condition is also called a ventricular septal defect; (2) a narrowing of the pulmonary valve and main pulmonary artery. This condition is also called pulmonary stenosis; (3) the aortic valves, which opens to the aorta, are enlarged and seem to open from both ventricles, rather than from the left ventricle only, as in a normal heart. In this defect, the aortic valve sits directly on top of the ventricular septal defect, and, (4) the muscular wall of the lower right chamber of the heart (right ventricle) is thicker than normal. This is also called ventricular hypertrophy.
https://www.cdc.gov/ncbddd/heartdefects/tetralogyoffallot.html

[28] AR pp. 29-30.

[29] AR p. 32.

[30] AR pp. 32, 34.

[31] AR pp. 36 *and see* SSR 85-15 ("The Medical-Vocational Guidelines (Regulations No. 4, Subpart P, Appendix 2) discuss the relative adjudicative weights which are assigned to a person's age, education, and work experience. Three tables in Appendix 2 illustrate the interaction of these vocational factors with his or her RFC. RFC is expressed in terms of sedentary, light, and medium work exertion. The tables rules reflect the potential occupational base of unskilled jobs for individuals who have severe impairments which limit their exertional capacities….")  In this case, the ALJ found that Plaintiff retained the RFC, in light of his heart condition as a severe impairment, to perform sedentary work. The ALJ then applied Medical Vocational Rule 201.27 based on Plaintiff's age of 20 ("younger individual aged 18-44"), high school education, lack of prior work experience ("unskilled or none"), and ability to communicate in English in determining that Plaintiff is "not disabled" as directed by the Rule.

[32] R. Doc. 12, pp. 4-7.

evaluation process.[33] Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff has the RFC to perform the full range of sedentary work at step five of the sequential evaluation process.[34]

## V. Law and Analysis

### A. Substantial Evidence Supports the ALJ's Determination that Plaintiff's "Learning Disorder" Is Not "Severe"

In his decision, the ALJ found that Plaintiff's learning disability and allegations of anxiety were "non-severe."[35] The ALJ found that while Plaintiff and/or his mother, Renita Jackson, testified that Plaintiff was in special education classes in school,[36] repeated eleventh grade twice, and was classified as having a learning disability, Plaintiff never submitted any educational records to establish these claims, despite that the record was held open after the first hearing for Plaintiff to submit such records.[37] Furthermore, the ALJ found that the evidence of record did not establish that Plaintiff had more than "minimal limitations" caused by his alleged learning disorder.[38] The ALJ considered the January 2015 report of Dr. James Van Hook, III ("Dr. Van Hook") the state agency consultative psychological examiner.[39] During Dr. Van Hook's examination, Plaintiff was administered a Wechsler Adult Intelligence Scale-IV ("WAIS-IV") test and obtained a Full Scale IQ score ("IQ score") of 67.[40] The ALJ noted that Dr. Van Hook diagnosed "borderline intellectual functioning," and Dr. Van Hook found Plaintiff's affect to be stable, which Plaintiff had no difficulty regulating. Dr. Van Hook further found that while Plaintiff reported excessive worry and showed "limited social judgment about some matters," Plaintiff demonstrated adequate eye

---

[33] R. Doc. 12, pp. 8-14.
[34] R. Doc. 12, pp. 14-16.
[35] AR p. 30.
[36] Plaintiff's SSA 3368 Disability Report states that Plaintiff did not attend special education classes. *See* AR p. 195.
[37] AR p. 30 *and see* AR pp. 41-81.
[38] AR p. 30.
[39] AR p. 30 *citing* AR pp. 262-64.
[40] AR. pp. 30, 263, 265.

contact, answered no questions in an aggressive manner, and was able to interact on a one to one

basis. Dr. Van Hook reported Plaintiff's thinking as intact, logical, coherent, and free from

circumstantial or tangential thought processes.[41] Dr. Van Hook reported that Plaintiff showed

adequate persistence.[42] The ALJ noted that Dr. Van Hook found Plaintiff's attention mildly

impaired and Plaintiff's long-term memory for remote recall weak, but also found Plaintiff's short-

term memory, intermediate memory, and long-term memory for recent recall intact. The ALJ

discounted Dr. Van Hook's other diagnoses of unspecified anxiety disorder and a history of

learning disabilities because they were "arguably rooted in the claimant's subjective reports."[43]

The ALJ noted that the only other medical evidence possibly relating to Plaintiff's learning

disability and/or anxiety was the opinion of Plaintiff's treating cardiologist Dr. Thomas Young,

who speculated that anxiety played a role in Plaintiff's reported symptoms of syncope, palpitations,

and shortness of breath.[44] However, the ALJ placed no weight on Dr. Young's opinion on this

issue because a definitive diagnosis of anxiety was "outside the scope of [Dr. Young's] medical

expertise," *i.e.*, cardiology.[45] The ALJ thus held that, in the absence of an academic record or

other documentary evidence of significantly limited intellectual abilities or a learning disorder,

"[Plaintiff's] IQ score and Dr. Van Hook's diagnosis are alone insufficient to establish that

[Plaintiff] has more than minimal limitations on his ability to perform basic work activities."[46]

The ALJ further held that Plaintiff's soft-spoken demeanor, and Plaintiff's testimony that he did

not know his address and was not capable of leaving home alone, were not supported by the

medical evidence in the record.[47] The ALJ found it significant that Dr. Young did not have

---

[41] AR. p. 30 *citing* AR pp. 263-264.
[42] AR p. 30 *citing* AR p. 263.
[43] AR. p. 30.
[44] AR p. 30 *citing* AR p. 278.
[45] AR p. 30.
[46] AR pp. 30-31.
[47] AR pp. 30-31 *and see* AR pp. 47-48, 70-71, 78.

difficulty hearing Plaintiff and did not characterize Plaintiff as a poor historian, and neither Dr. Young nor Dr. Van Hook identified significant mental deficiencies or severe cognitive deficits consistent with Plaintiff's presentation at the hearing.[48] The ALJ also found that these doctors' notes did not establish that Plaintiff's mental impairments had lasted or were expected to last a continuous period of 12 months, as required for a finding of a severe impairment.[49]

Notably, in considering whether Plaintiff's mental impairments were "severe," the ALJ also considered the four functional areas (as then) set out in the regulations for evaluating mental disorders, known as the "paragraph B" criteria:[50] activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation.[51] The ALJ applied these four broad functional areas, which are also set forth in Listing 12.05D,[52] and found that Dr. Van Hook's examination of Plaintiff, and the testimony of Plaintiff and his mother, established that Plaintiff had no more than "mild" limitations in the areas of daily living, social functioning, and concentration, persistence, and pace, and Plaintiff had no episodes of decompensation.[53] Because the ALJ found that Plaintiff had only mild limitations, and because Plaintiff's IQ score and Dr. Van Hook's report alone were insufficient to establish that Plaintiff had more than minimal limitations, the ALJ found that Plaintiff's mental impairments were non-severe.[54]

---

[48] AR p. 31.
[49] AR pp. 30-31.
[50] *See* 20 C.F.R. 404, Subpt. P, App. 1, 12.00E and 20 C.F.R. § 416.920(a)(c)(3).
[51] AR pp. 31-32.
[52] AR, pp. 31-32. Although Listing 12.05 was amended effective January 2, 2017 and Paragraphs C and D have been removed, "[t]he amended Listing generally applies to claims filed on or after January 1, 2017 and is not applicable to this case." *Williams v. Berryhill*, No. 16-01367, 2018 WL 1006057, at *9 (W.D. La. Jan. 17, 2018) (*citing* Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5431732 (Sept. 26, 2016) and explaining that "[t]he SSA stated that it will use the new rules on or after their effective date in any case in which it makes a determination or decision. The SSA expects the Federal courts will review its final decisions using the rules that were in effect at the time it issues the decisions.")).
[53] AR pp. 31-32.
[54] AR pp. 31-32.

### i. Plaintiff Did Not Carry His Burden of Proving A "Severe" Learning Disability

"The claimant has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity."[55]  In the Fifth Circuit, an impairment is considered non-severe if it is "'a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience,'" which standard was correctly cited by the ALJ.[56]  "The burden rests on the Plaintiff at Step Two, but that burden is de minimus."[57]

The record and briefs reflect that the ALJ, Plaintiff and the Commissioner all applied Listing 12.05, "Mental Retardation" to Plaintiff's alleged learning disorder.[58]  However, as noted by the ALJ, other than Dr. Van Hook's report of examination, including Plaintiff's IQ test, and the report of the state agency psychological consultant, there is no other objective evidence of Plaintiff's alleged mental impairment.[59]  At the first hearing, the ALJ specifically held the record open for Plaintiff to submit his educational records.[60]  At the second hearing, Plaintiff's counsel stated that he had Plaintiff's educational records in hand and would file them in the record; however, nothing more was submitted.[61]  The ALJ specifically noted this lack of supporting documentation in the record.[62]  Plaintiff provided no other documentation or records to support the testimony that he was previously diagnosed with a learning disability or that he attended special

---

[55] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).
[56] *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (*quoting Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)) (internal quotation omitted) and AR p. 30.
[57] *Rowe v. Colvin*, No. 16-204, 2017 WL 3821473, *11 (M.D. La. Aug. 31, 2017) (*citing Calderwood v. Colvin*, No. 14-495, 2016 WL 1077956, *9 (E.D. Tex. Mar. 18, 2016)).
[58] AR pp. 31-32, R. Doc. 12, R. Doc. 14, p. 10.
[59] AR pp. 30-31, *and e.g*., pp. 34, 36.
[60] AR pp. 43-45, 81.  Plaintiff's counsel made some vague remarks at the hearing tending to indicate that the records were not supportive of his client's case and/or were irrelevant.  AR pp. 44-45.
[61] AR p. 45.
[62] AR pp. 30-31.

education classes, nor records that otherwise show a history of treatment, a recommendation for treatment (aside from one recommendation from Dr. Young for psychological treatment before the first hearing), and/or a diagnosis of any mental impairment based on objective findings, rather than subjective complaints.

"If [a plaintiff] is not able to provide sufficient medical evidence, the ALJ may make a decision based on the information available."[63]  Accordingly, regarding the evidence presented in the record, Dr. Van Hook's report noted that Plaintiff claimed to have received non-specific mental health services "years ago" and was not taking medication for his learning disability.[64]  Dr. Van Hook found that Plaintiff was "adequate" in many areas.  Plaintiff was able to care for his physical needs, *i.e.*, bathing and dressing, was appropriately dressed, and had an adequate appearance and hygiene.[65]  Dr. Van Hook's opinion was that Plaintiff was cooperative, had goal-directed speech, had adequate persistence and effort, had a stable affect, made adequate eye contact, and while Plaintiff possessed limited social judgment on some matters, he was not aggressive and was able to interact on a one to one basis.[66]  Moreover, Dr. Van Hook found Plaintiff's thinking to be intact, logical, and coherent, and oriented as to person, place, time and situation. Despite a finding of borderline-impaired verbal comprehension, Plaintiff had adequate receptive language abilities, and intact short-term and intermediate memory, as well as recent recall of long-term memory.[67]  Plaintiff reported to Dr. Van Hook that he could mop, sweep, sometimes cook and use public transportation, and was found to have a fair to marginal overall level of adaptation.[68]  Notably, Dr.

[63] *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).
[64] AR p. 262.
[65] AR p. 262.
[66] AR pp. 262-63.
[67] AR p. 263.
[68] AR pp. 263-64.  Plaintiff's testimony at the hearing conflicts with his reports to Dr. Van Hook regarding his ability to hail a cab and cook, *see* AR p. 78. The ALJ did not find Plaintiff's testimony entirely credible.  AR pp. 31, 33.

Van Hook did not diagnose any significant or severe impairments. The ALJ considered these findings.[69]

Dr. Van Hook's clinical impression of "History of Learning Disabilities," and "Unspecified Anxiety Disorder,"[70] and his diagnoses of "mild" impairments, (*i.e.*, finding Plaintiff mildly impaired in his ability to sustain effort and persist at a normal pace over the course of a routine 40-hour workweek and finding Plaintiff "perhaps" mildly impaired in his ability to show stress tolerance), were all based on Plaintiff's reported history of learning problems and anxiety; however, Dr. Van Hook's report[71] specifically states that there were "no accompanying records for corroboration of reported history." The ALJ found that the lack of corroborating records detracted from these impressions, particularly considering that Dr. Van Hook specifically noted that Plaintiff "appeared to be a questionable historian" who possibly magnified his symptoms and embellished.[72] The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion."[73] Additionally, the ALJ questioned Plaintiff's credibility because the ALJ found that Plaintiff's demeanor and testimony at the hearing were inconsistent with the evidence in the record, as Dr. Van Hook did not identify any *significant* mental deficiencies or cognitive deficiencies consistent with Plaintiff's testimony[74] (*e.g.*, Plaintiff could not leave his home

---

[69] AR p. 30.

[70] Plaintiff did not indicate that anxiety was an impairment. AR pp. 193-198. Furthermore, Plaintiff does not argue that he is disabled due to "anxiety" in brief, nor does he assign as error the ALJ's findings as to anxiety. There are also no objective records indicating that Plaintiff has a history of anxiety or has received or sought treatment for anxiety.

[71] Dr. Young's report also mentions anxiety; however, Dr. Young is a cardiologist, not a mental health practitioner. The opinion of a specialist is generally accorded greater weight than that of a non-specialist. *Locke v. Massanari*, No. 2000-0238, 285 F.Supp.2d 784, 793 (S.D. Tex. July 20, 2001) *citing Newton*, 209 F.3d at 453. Indeed, Dr. Young recommended for Plaintiff to explore mental health resources and a psychological evaluation with other practitioners. AR p. 273. However, there is no record evidence that Plaintiff sought or obtained mental health treatment.

[72] AR pp. 262-264.

[73] *Locke*, 285 F.Supp.2d at 794 *citing Newton*, 209 F.3d at 453 (other citations omitted).

[74] AR p. 31.

alone).[75] *See also* Dr. Van Hook's clinical impression of "borderline intellectual functioning," which placed Plaintiff at "the *mild* range of intellectual disabilities." (emphasis added).[76]

In determining severity, the ALJ also considered the four broad functional areas referred to as the "paragraph B" criteria to evaluate the severity of Plaintiff's mental impairment. With respect to the first functional area, activities of daily living, the ALJ found that Plaintiff had no limitation, as Plaintiff was able to: perform personal care activities, mop, sweep and sometimes cook, call a cab, ride a bus, do laundry, and shop in stores for clothes and food. The ALJ found that the documentary evidence indicated that Plaintiff had the ability to do more things than his testimony reflected.[77]

As to the second functional area, social functioning, the ALJ found that Plaintiff had no limitation, as despite Dr. Van Hook's conclusion that Plaintiff showed "limited social judgment about some matters," during the exam, Plaintiff was able to maintain adequate eye contact and interact on a one to one basis, he was not aggressive, and he had no difficulty carrying on a conversation. Further, Plaintiff maintained relationships with his wife and mother and was able to function in public, such as at the grocery store and church.[78]

With respect to the third functional area, concentration, persistence, and pace, the ALJ found that Plaintiff had no limitation because, during Dr. Van Hook's exam, Plaintiff did not have difficulty regulating his affect, his thinking was reported to be intact, logical, and coherent, his thought processes were not circumstantial or tangential and he showed adequate persistence and only mildly-impaired concentration. Further, Dr. Van Hook found that Plaintiff's memory was intact, except for weakness in remote recall, and Plaintiff showed possible "symptom

---

[75] AR p. 47.
[76] AR p. 264.
[77] AR p. 31.
[78] AR p. 31.

magnification" in reporting vague psychotic features.   The ALJ therefore found that Plaintiff had no limitation in maintaining concentration, attention, or focus for the performance of tasks and assignments.[79]

Finally, with regard to the fourth functional area, the ALJ found that Plaintiff experienced no episodes of decompensation which have been of extended duration.[80]   Because the ALJ found that Plaintiff had no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation of extended duration, the ALJ found Plaintiff's mental impairments non-severe.[81]   The foregoing is substantial evidence supporting the ALJ's finding that Plaintiff did not have limitations stemming from his mental impairments, either alone or in combination with his heart condition, that would interfere with Plaintiff's ability to work in sedentary positions.[82]

Plaintiff argues that the ALJ erred in relying on Dr. Van Hook's subjective mental status exam, and neglected to give weight to the "objective medical evidence derived from the WAIS-IV Test," *i.e.*, Plaintiff's IQ score and related subtest scores.[83]   Plaintiff contends that his IQ score of 67 is "more than 2 standard deviations below the mean score of 100," and markedly below his peers.[84]   Plaintiff further contends that the ALJ erred in not analyzing the "Working Memory Index" and "processing speed" subtests, on which Plaintiff also scored below 70 and at two

---

[79] AR pp. 31-32.  The ALJ noted that there was no other objective evidence establishing difficulties in this functional area.

[80] AR p. 32.

[81] AR pp. 31-32. As discussed below, for the same reasons, the ALJ also found that Plaintiff's learning disability did not meet the criteria of Listing 12.05C.

[82] AR pp. 30-31 ("In the absence of academic records or other documentary evidence of significantly limited intellectual abilities or a learning disorder, the claimant's IQ score and Dr. Van Hook's diagnoses alone are insufficient to establish that the claimant has more than minimal limitations on his ability to perform basic work activities."). While this finding does not specifically allude to Plaintiff's age, education or work experience, *see Stone*, 752 F.2d at 1101 ("[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."), the ALJ recited the proper standard in his opinion at AR p. 30 and as noted above, which indicates that his finding was made irrespective of Plaintiff's age and education in conformance with *Stone*. (Plaintiff has no prior work experience. AR pp. 36, 194.)

[83] R. Doc. 12, pp. 4-5 and R. Doc. 17, p. 3.

[84] R. Doc. 12, p. 5.

standard deviations below the mean score of 100, which Dr. Van Hook found to be "Extremely Low." Plaintiff contends that these scores establish "marked limitations," and under SSR 85-15, these low scores "constitute critically limited mental functioning capacity necessary for any substantial gainful activity."[85] Plaintiff argues that the ALJ's holding that Plaintiff's IQ score and Dr. Van Hook's examination do not establish severity ignores the purpose of the IQ test, which is to provide an objective assessment of what can be learned in school and work settings, and the ALJ failed to consider the extent to which Plaintiff's learning disability is related to relevant aspects of his life, including his repeating the 11th grade, his classification of having a learning disability, his limited judgment, his weak reading and math skills, and his inability to manage money.[86] Plaintiff further argues that the structure of Listing 12.05C presumes that a valid IQ score of 60 through 70 is "severe."[87]

The Court disagrees. The ALJ noted Plaintiff's IQ score, and also evaluated the four functional areas based on the evidence of record. The ALJ found that because Plaintiff had only mild limitations in three areas and no decompensation,[88] and because Dr. Van Hook's

---

[85] R. Doc. 12, p. 6. SSR 85-15 does not address specific IQ scores.
[86] R. Doc. 12, pp. 6-7.
[87] R. Doc. 12, p. 7.
[88] Plaintiff relies on *Pearson v. Colvin*, No. 13-131, 2014 WL 4425803, **5-7, (M.D. La. Sept. 8, 2014), wherein this Court remanded the ALJ's decision, finding that the ALJ's determination at step 2 that the plaintiff's mental impairment was not "severe" was not supported by substantial evidence and adversely impacted the ultimate issue of disability at step 5. *See* R. Doc. 12, pp. 14, 16. However, the facts of *Pearson* are distinguishable from those herein. The *Pearson* Court found that, contrary to the ALJ's findings, the *Pearson* plaintiff was more than mildly impaired in the areas of social functioning because she suffered from crying spells, spent most days isolated in her room, stopped attending church because the crowd was more than she could handle, and got into physical fights with her family members. Furthermore, the *Pearson* plaintiff had a history of passive suicidal ideation accompanied by a diagnosis of Major Depressive Disorder. Next, the Court found that the ALJ's analysis of the Plaintiff's ability to maintain concentration, persistence, and pace was flawed because the ALJ considered the plaintiff's difficulty in sitting, standing, lifting, squatting, etc., which were physical limitations irrelevant to that functional area. *Id.* at **5-6. Further, the Court found that the ALJ mischaracterized the record evidence in some cases, such as by stating that the plaintiff did not need reminders to take her medication, and that she made meals every day, when the evidence reflected that the plaintiff did need reminders and only prepared meals every other day. *Id.* at *5. The Court thus found no substantial evidence to support the ALJ's findings. *Id.* at *6. As explained herein, however, substantial evidence supports the ALJ's associated findings that Plaintiff is only mildly impaired in the analogous functional areas, and no mischaracterizations of the facts were found in the ALJ's decision in this case.

uncontradicted findings were of only "mild" impairments, Plaintiff did not have "marked limitations," despite his IQ score.[89] And, in contravention of Plaintiff's two arguments above, *i.e.*, that the ALJ did not place enough weight on the IQ score of 67, which should be presumed "severe," "[a]s with any medical evidence, the ALJ is not 'required to accept a claimant's IQ score. Rather, the ALJ should examine the record to determine whether the proffered IQ score is reliable– that is, consistent with the claimant's daily activities and behavior. An ALJ may reject IQ scores if they are inconsistent with the record.'"[90] As discussed herein, substantial evidence supports the ALJ's determinations regarding Plaintiff's abilities in light of: Dr. Van Hook's exam, which revealed Plaintiff was "adequate" in many areas;[91] the ALJ's finding that Plaintiff's testimony about his abilities was non-credible;[92] Dr. Van Hook's finding that Plaintiff magnified his symptoms and embellished;[93] the lack of objective evidence supporting Plaintiff's subjectively-reported history of learning disabilities,[94] deficiencies in math and reading,[95] and repeating grades; and finally, the lack of evidence of past and current mental health treatment, including diagnosis

---

[89] AR pp. 30-32. *See Harmon v. U.S. Com'r of Soc. Sec. Admin.*, No. 12-01286, 2014 WL 4639757, **8-9 (W.D. La. Sept. 16, 2014) (despite that the ALJ "may have occasionally used words like 'significantly limits' in her opinion," a reading of the opinion as a whole reflected that the ALJ properly analyzed the plaintiff's impairments, and holding: "Here, the ALJ cited the *Stone* standard and properly evaluated the evidence before making her determination that plaintiff's impairments were not severe and did not preclude him from engaging in basic work activities. We conclude that [the ALJ] did not apply the improper legal standard simply because she used the words 'significantly limits' in her opinion.").

[90] *Ledet v. Colvin*, No. 15-4651, 2016 WL 3079026, *8 (E.D. La. May 3, 2016) (*quoting McGee v. Astrue*, 291 F. App'x 783, 787, 2008 WL 4093034 (8th Cir. 2008) (collecting cases)); *see also Winn v. Soc. Sec. Admin.*, No. 12-2690, 2013 WL 5507289, *11 (E.D. La. Oct. 2, 2013) ("As with any medical evidence, the ALJ is not 'required to accept a claimant's IQ score. Rather, the ALJ should examine the record to determine whether the proffered IQ score is reliable-that is, consistent with the claimant's daily activities and behavior. An ALJ may reject IQ scores if they are inconsistent with the record.'") (internal citations omitted).

[91] AR pp. 262-64.

[92] AR pp. 30-31.

[93] AR pp. 262-64.

[94] AR pp. 54-55, 73, and 264 (Plaintiff's reports of his history to Dr. Van Hook).

[95] While Dr. Van Hook noted that Plaintiff's math skills were not adequate and Plaintiff made errors with simple math functions, that must be considered in light of Dr. Van Hook's other findings that Plaintiff showed "possible symptom magnification." AR p. 264. Therefore, the ALJ was entitled to discount these findings. *See Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983) (holding that it is the ALJ's duty, as the trier of facts, of "weighing the evidence presented in a claim for disability insurance benefits….").

or medication.[96]  Accordingly, the ALJ's decision not to place more weight on Plaintiff's IQ score of 67, and the subtests thereto, was not reversible error, and there is substantial evidence to support the ALJ's finding that Plaintiff's mental impairment was not "severe."[97] [98]

## ii. Alternatively, the ALJ's Decision that Plaintiff's Learning Disability Is Not Severe Is Not Reversible Error

Alternatively, and as the Commissioner points out, benefits are denied at step 2 of the sequential analysis only if the claimant has no medically severe impairment.[99]  Once any severe impairment is determined to exist, all medically determinable impairments including non-severe ones must be considered in the remaining steps of the sequential analysis.[100]  The Fifth Circuit has held that an ALJ's failure to determine severity of a mental impairment at step two is not a basis for remand when the ALJ proceeds to the later steps of the analysis.[101]  Herein, the ALJ analyzed Plaintiff's mental impairments and found them non-severe; however, he also found that Plaintiff's heart condition was "severe"[102] and thereafter proceeded with the sequential analysis, wherein he

---

[96] *See Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012) (holding that substantial evidence supported a finding of non-severity in the plaintiff's mental impairment in part because the medical records showed that the plaintiff had not sought treatment or taken medication for his mental health complaints.)

[97] AR p. 32.  Even assuming *arguendo* that Plaintiff's IQ score as reported by Dr. Van Hook resulted in a "severe" mental impairment, substantial evidence supports the ALJ's determination that Plaintiff's conditions do not meet or equal the Listings.  AR p. 32.  To establish disability pursuant to Listing 12.05C, Plaintiff has the burden of establishing each element of the Listing (including that he meets the diagnostic criteria of the introductory paragraph).  *Randall v. Astrue*, 570 F.3d 651, 653 (5th Cir. 2009).  Because substantial evidence supports a determination that Plaintiff cannot meet his burden of establishing "subaverage general intellectual functioning with deficits in adaptive functioning," Plaintiff does not meet Listing 12.05C or 12.05D regardless of the controlling IQ score.

[98] The ALJ also noted that the Dr. Van Hook's January 6, 2015 report and Dr. Young's notes from January 1, 2015 to September 22, 2015 also fail to establish that Plaintiff's mental impairments have lasted or are expected to last a continuous period of 12 months, as is required to show a "severe" impairment.  AR p. 31 *and see Newton*, 209 F.3d at 452.

[99] 20 C.F.R. § 416.920(a)(4)(ii).

[100] 20 C.F.R. § 416.923, 416.945(a)(2).

[101] *Herrera v. Commissioner of Soc. Sec.,* 406 F. App'x 899, 903 (5th Cir. 2010) *citing Adams v. Bowen,* 833 F.2d 509, 512 (5th Cir. 1987) (ALJ's failure to make a severity finding at step two is not a basis for remand where ALJ proceeds to later steps of the analysis); *see also Mays v. Bowen,* 837 F.2d 1362, 1365 (5th Cir. 1988) (per curiam) ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found.") *and Burgette v. Colvin*, 12-1155, 2013 WL 3776291, *3 (W.D. La. July 15, 2013) ("When, as here, however, the ALJ's analysis proceeds beyond step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required.") (collecting cases).

[102] AR pp. 30-35.

considered all of Plaintiff's impairments. Therefore, the ALJ's findings as to the severity of Plaintiff's mental impairments do not constitute reversible error.

## B. Substantial Evidence Supports the ALJ's Determination that Plaintiff Does Not Meet Listing 12.05C

As mentioned, both Plaintiff and the Commissioner refer to Listing 12.05C in their briefing.[103] Although Listing 12.05 was amended effective January 2, 2017 and Paragraphs C and D have been removed, "[t]he amended Listing generally applies to claims filed on or after January 1, 2017 and is not applicable to this case."[104] The regulations in effect at the time the ALJ issued his decision included Listing 12.05C, which provided as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR

---

[103] AR p. 32, R. Doc. 12, pp. 8-14.
[104] *Williams,* 2018 WL 1006057, at *9, n. 6 ("[t]he SSA stated that it will use the new rules on or after their effective date in any case in which it makes a determination or decision. The SSA expects the Federal courts will review its final decisions using the rules that were in effect at the time it issues the decisions.").

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.[105]

Plaintiff has the burden of establishing that he meets a Listing.[106] The criteria for the Listings are "demanding and stringent."[107] "Plaintiff's subjective complaints, without objective medical evidence, are insufficient to establish disability."[108] "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."[109] Here, to establish Plaintiff is disabled pursuant to Listing 12.05C, Plaintiff must satisfy "…not only the requirements of Subsection C itself—low IQ scores and another physical or mental impairment, but also the requirements of the 'introductory paragraph'—the claimant has 'significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period'"[110] If Plaintiff does not produce medical evidence

---

[105] *See Randall*, 570 F.3d at 653 (*quoting* 20 C.F.R. Chap. III, Pt. 404, Subpt. P, App. 1, Listing 12.05). Plaintiff argues only that the ALJ erred in failing to find that he meets the requirements of Listing 12.05C. R. Doc. 12, pp. 8-13. Plaintiff does not contend that he should be considered presumptively disabled based on any other subsection of Listing 12.05.
[106] *See Muse*, 925 F.2d at 789 and 20 C.F.R. § 404.1520(d).
[107] *Siewert v. Colvin*, No. 15-476, 2016 WL 7478968 at *6 (M.D. La. Dec. 29, 2016) (*citing Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)).
[108] *Siewert*, 2016 WL 7478968 at *6 *citing* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.
[109] *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).
[110] *Morris v. Colvin*, No. 13-66, 2014 WL 1415004 at *6 (M.D. La. April 11, 2014) *citing Randall*, 570 F.3d 651 (other internal citation omitted). *See also Parker v. Astrue*, No. 11-294, 2012 WL 5384821 at *4 (M.D. La. Nov. 1, 2012) ("the Fifth Circuit held that to establish disability under Listing 12.05C., a claimant has the burden of first demonstrating that his impairment satisfies the introductory paragraph's diagnostic description, and then showing the severity criteria of paragraph A, B, C or D.").

to meet the first of these three requirements [*i.e.*, the diagnostic description], the court need not examine whether he exhibits the severity criteria.[111] Herein, the ALJ found that Plaintiff's impairments, singularly and in combination, did not meet or equal the required criteria for and the impairments listed in 20 C.F.R. Part 404, Appx. 1.[112]

### i. The ALJ Analyzed Plaintiff's Adaptive Functioning

Regarding step 3 of the sequential analysis, the ALJ found as follows:

> The undersigned has considered the impairments listed in Appendix 1 to Subpart P of Part 404 of the Regulations and finds that the claimant's impairments do not singularly or in combination meet or medically equal the required criteria for and of the impairments listed under section 4.01, Category of Impairments, Cardiovascular System; as well as any of the other relevant listed impairments. The signs, symptoms, and history of treatment presented in the evidence of record are inconsistent with any impairments of listing-level severity.[113]

The Commissioner asserts that the failure of the ALJ to articulate his analysis for the determination that Plaintiff's impairments were not presumptively disabling because they did not meet or equal the severity criteria of one of the impairments in Appendix 1 was legal error; however, such error does not warrant reversal in this instance.[114] According to the Commissioner, the relevant question thus becomes whether the ALJ's error "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision," to which the answer in this case is "no."[115] The Commissioner argues that any error was harmless because Plaintiff failed to prove the

---

[111] *Ledet v. Colvin,* No. 15-4651, 2016 WL 3079026, at *7 (E.D. La. May 3, 2016), *citing McCaskill v. Department of Health & Human Services,* No. 15-60304, 640 F. App'x 331, 334, 2016 WL 700220, *2 (5th Cir. 2016).
[112] AR p. 32. Plaintiff has not argued that the ALJ erred in finding that his cardiac impairment fails to meet or equal a Listing. *See* AR p. 32.
[113] AR p. 32.
[114] R. Doc. 14, p. 9 *citing Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007) *and see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.")
[115] R. Doc. 14, p. 9 *citing Hurst v. Colvin*, 639 F. App'x 1018, 1021, 2016 WL 588457, (5th Cir. 2016) (other citations omitted).

diagnostic description's requirement of deficits in adaptive functioning, and therefore, Plaintiff cannot show his substantial rights have been affected.[116]  In his Reply brief, Plaintiff argues that this legal error substantially prejudiced him and his substantial rights were affected.[117]

It is clear that, in addition to establishing that Plaintiff meets the requirements of Listing 12.05C, Plaintiff must also separately satisfy the diagnostic description of Listing 12.05, which requires a showing of "subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[118]  Although Listing 12.05 does not define "adaptive functioning," the paragraph B criteria[119] (also substantively set forth in Listing 12.05D)[120] have been used to evaluate "adaptive functioning."[121]  The ALJ analyzed the paragraph B criteria as part of his step 2 analysis, which he then incorporated into his step 3 analysis.[122] However, even if the ALJ committed legal error in not addressing his findings in a specifically-

---

[116] R. Doc. 14, pp. 9-12.

[117] R. Doc. 17, pp. 1-2.

[118] *Randall*, 570 F.3d 651 at 653.

[119] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(A).

[120] *Id.* ("Paragraph D contains the same functional criteria that are required under paragraph B of the other mental disorders listings.")

[121] *See Durden v. Astrue,* No. 07-865, 586 F.Supp.2d 828, 834 (S.D. Tex. Sept. 8, 2008) ("Although the SSA has not explicitly defined 'deficits in adaptive functioning,' Listing 12.00 does provide criteria for assessing the 'severity' required by section (C) of some other mental impairments and by section (D) of Listing 12.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C). These criteria include 'adaptive activities of daily living,' (such as 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.'), 'social functioning' (including 'the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers') and 'concentration, persistence, or pace' (defined as 'the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.'). *Id.* at § 12.00(C)(*l* )-(3). Although it is not clear that the SSA intended these criteria to be synonymous with the term 'deficits in adaptive functioning,' some courts have considered these criteria when determining whether a claimant has the deficits in adaptive functioning required to meet Listing 12.05(C) because they overlap, to some extent, with the examples of adaptive functioning behaviors provided in the DSM–IV.")

[122] AR p. 32.  "Because the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, the impairments are non-severe (20 C.F.R. 404.1520a(d)(1).  For this reason, the undersigned also finds that the claimant's mental impairments do not meet the criteria of Listing 12.05C."

designed step 3 analysis, such error was harmless and would not cast into doubt the existence of substantial evidence to support the ALJ's decision, as discussed below.[123]

### ii. Plaintiff Did Not Carry His Burden Of Proving that He Meets the Diagnostic Definition of 12.05[124]

Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments do not meet all of the requirements of Listing 12.05C (*see* definition *supra*) because Plaintiff's IQ score of 67 meets the first requirement, his heart condition was found "severe" and thus meets the second requirement (*i.e.*, "another physical or mental impairment imposing an additional and significant work-related limitation of function"), and, despite that the ALJ did not evaluate the third prong, the evidence of record, *i.e.*, Plaintiff's testimony and Dr. Van Hook's examination, establishes that Plaintiff has deficits in adaptive functioning.[125] Plaintiff further argues that the ALJ erred by considering Listing 12.05D instead of Listing 12.05C, which two listings should have been differentiated. Plaintiff lastly argues that the ALJ failed to consider the quality of Plaintiff's deficits in adaptive functioning.[126]

Plaintiff's first two arguments fail because Plaintiff must first produce medical evidence to meet the diagnostic description of Listing 12.05 "Mental Retardation," *i.e.*, subaverage general

---

[123] *See Andre v. Astrue*, No. 11-250, 2012 WL 5363321 at *5 (M.D. La. Sept. 24, 2012), *report and recommendation adopted*, No. 11-250, 2012 WL 5363317 (M.D. La. Oct. 30, 2012) ("Since the plaintiff failed to show that the record includes the evidence demonstrating he can meet his burden at the third step, the ALJ's neglect to set out a detailed basis for his finding did not affect the plaintiff's substantial rights, and therefore is a harmless error.") *citing Audler*, 501 F.3d at 449.

[124] Plaintiff does not assign error to the ALJ's finding that he did not meet the Listings for cardiovascular impairments. With respect to Plaintiff's heart condition, the ALJ specifically found that "the medical evidence of record contains no opinion that the claimant is in need of urgent surgical intervention and therefore does not establish that the claimant's cardiovascular impairment is disabling as alleged." The ALJ noted that Plaintiff's treating cardiologist, Dr. Young, reviewed Plaintiff's MRI and reported that Plaintiff's level of symptoms was out of proportion to his findings on the MRI, "as people with these results are basically asymptomatic." Moreover, in September 2015, Dr. Young suspected that anxiety was "playing a role" in Plaintiff's level of symptoms and recommended a psychological evaluation. AR pp. 34-35 *citing* AR pp. 268-283. Considering this opinion, the ALJ found that Plaintiff's symptoms of chest pain were due to anxiety instead of a cardiac impairment. AR p. 35.

[125] R. Doc. 12, pp. 8-13.

[126] R. Doc. 12, pp. 10-14.

intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, before the severity criteria of List 12.05C are reached. If a plaintiff does not produce medical evidence to meet the diagnostic description, the court need not examine whether he exhibits the severity criteria set out in subsections A, B, C, or D.[127] As previously discussed, at step 2 of the sequential analysis, the ALJ considered the four functional areas set forth in the paragraph B criteria to determine if Plaintiff had "deficits in adaptive functioning," the use of which factors has been held permissible.[128] The ALJ's application of those four factors, explained in detail earlier in this Ruling, can be summarized as follows: the ALJ found only "mild" impairments in three of the areas, and no periods of decompensation, which is consistent with his finding that Plaintiff's mental impairment is not "severe."[129] Notably, with respect to adaptive functioning, "the Fifth Circuit has indicated that the definition of 'adaptive activities' found in § 12.00(C)(1) should be used. Thus, adaptive functioning encompasses adaptive activities 'such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.'"[130] These factors clearly overlap with the paragraph B/12.05D criteria considered by the ALJ in finding that Plaintiff was able to engage in several areas of daily living including performing personal care activities, mopping, sweeping and sometimes cooking, calling a cab, riding a bus, doing laundry, and shopping in stores for clothes and food.[131] Plaintiff attributed his inability to engage in yard work to chest problems, not his mental impairment.[132] As far as social

---

[127] *Ledet,* 2016 WL 3079026, at *7 (E.D. La. May 3, 2016), *citing McCaskill,* 640 F. App'x at 334.

[128] *See Durden,* 586 F.Supp.2d at 834.

[129] AR pp. 31-32.

[130] *Parker,* 2012 WL 5384821, at *4, *and see* Plaintiff's brief listing the same factors at R. Doc. 12, p. 9 *and citing Randall,* 570 F.3d at 659, n. 15 and *Morris v. Dreke,* 413 F.3d 484, 487 (5th Cir. 2005) (*habeas* proceeding).

[131] AR p. 31 *citing* AR pp. 206, 217, 260-65. Plaintiff also testified about the amount of his household expenses, which reflects his awareness of his bills. AR p. 75.

[132] AR p. 31 *citing* AR pp. 206, 217.

functioning, Plaintiff was able to maintain adequate eye contact and interact on a one to one basis, he was not aggressive, and he had no difficulty carrying on a conversation. Further, Plaintiff maintained relationships with his wife and mother, reported getting along "very good" with authority figures, and was able to function in public, such as at the grocery store and church.[133] Plaintiff demonstrated concentration, persistence, and pace in that he did not have difficulty regulating his affect, his thinking was reported to be intact, logical, and coherent, his thought processes were not circumstantial or tangential, he showed adequate persistence and he had only mildly impaired concentration.[134] The ALJ therefore found that Plaintiff had no limitation maintaining concentration, attention, or focus for the performance of tasks and assignments.[135]

As also previously mentioned, Dr. Van Hook found that Plaintiff's ability to understand, remember, and carry out instructions was intact during the examination, and Plaintiff was able to respond appropriately to supervision and interact appropriately with others during testing, despite possessing limited social judgment about some matters. Dr. Van Hook found that Plaintiff's adaption or self-report was "fair to marginal," and Plaintiff was aware of hazards and safety.[136] Further, while Plaintiff was found "mildly impaired" in his ability to sustain effort and persist at a normal pace over the course of a routine 40-hour workweek and in his stress tolerance, Dr. Van Hook specifically based these diagnosis on Plaintiff's subjective self-reporting of anxiety and a history of learning disorder, which the ALJ did not find credible due to the lack of objective medical records/history supporting same.[137] For those same reasons, the ALJ did not give great

---

[133] AR p. 31 *citing* AR pp. 207, 209, 218, 260-65, and AR p. 220.
[134] AR pp. 31-32 *citing* AR pp. 260-65.
[135] AR pp. 31-32. The ALJ noted that there was no other objective evidence establishing difficulties in these areas. Furthermore, the ALJ analyzed all four functional areas and/or adaptive activities. This refutes Plaintiff's allegation that there was a "post hoc rationalization" by the ALJ in equating "deficits in adaptive functioning" with just the first functional area, *i.e.*, "activities of daily living." *See* R. Doc. 12, p. 10.
[136] AR p. 264.
[137] AR pp. 30, 264.

weight to Dr. Van Hook's opinion that Plaintiff's ability to maintain attention/concentration was inadequate and gave "little weight" to the opinion of the state agency psychological consultant that Plaintiff had a "severe" impairment (despite the consultant's ultimate finding that Plaintiff had the ability to perform simple duties that could be learned on the job in a short time and involved things rather than people).[138]

Plaintiff argues that the ALJ failed to assess the "quality" of Plaintiff's adaptive functioning in light of the proffered testimony, and further, failed to specifically assess Plaintiff's credibility and/or explain why he did not find Plaintiff credible.[139]  Likewise, Plaintiff argues that there is no evidence to contradict the testimony[140] of Plaintiff's alleged limitations and inabilities, and thus the testimony should not be considered "self-serving."[141]  However, the ALJ specifically stated, several times, that he found the allegations relating to Plaintiff's limited ability to manage his affairs and function independently in public were not credible[142] because they were not supported

---

[138] AR pp. 35-36, 89, 93, 264. The state agency psychological consultant found that Plaintiff had "mild" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning and concentration, persistence or pace, and no repeated episodes of decompensation.  AR p. 88. She diagnosed Borderline Intellectual Functioning, despite Plaintiff's IQ score of 67, due to his level of adaptive functioning. AR. p. 89.

[139] R. Doc. 12, pp. 9-13 and R. Doc. 17, pp. 2-3.

[140] Plaintiff argues that Dr. Van Hook had no objective basis on which to assess how Plaintiff participated in the reported activities of daily living referenced by the ALJ (*e.g.*, mopping, sweeping, cooking, calling a cab, doing laundry, shopping for clothes).  Plaintiff cites *Hames v. Heckler,* 707 F.2d 162 (5th Cir. 1983) (incorrectly titled "*Owens v. Heckler*" by Plaintiff) for the proposition that, in light of Dr. Van Hook's failure to objectively assess the quality of Plaintiff's participation, there is "no evidence of a conflict in evidentiary choice or interpretation and no contrary medical evidence regarding plaintiff's ability to do actual household chores and travel without assistance and supervision.") R. Doc. 12, p. 13.  The *Hames* plaintiff alleged a back disability, which is factually distinguishable from the facts herein.  Moreover, in *Hames,* the Fifth Circuit affirmed the ALJ's decision finding that the plaintiff's degree of impairment, evidenced by the objective medical findings, did not impose functional restrictions of disabling severity on the plaintiff's activities and held: "In the absence of objective medical evidence indicating that Plaintiff suffered disabling back pain, Plaintiff failed to meet her burden of proving disability. …The record demonstrates an absence of objective medical evidence indicating that Plaintiff suffered such disabling back pain." (internal citations omitted).  *Id.* at 165-66.  Herein, the ALJ found that the only objective medical evidence in the record did not indicate that Plaintiff's mental impairment was disabling, which, as noted by the Fifth Circuit in *Hames,* is Plaintiff's burden to prove. The Fifth Circuit further noted that it is the ALJ's duty, as the trier of facts, of "weighing the evidence presented in a claim for disability insurance benefits…." *Id.* at 166.

[141] R. Doc. 17, p. 2-4.

[142] AR p. 33 ("After careful consideration of the evidence, the undersigned finds that the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimants' statements concerning the intensity, persistence and limited effects of these symptoms are not entirely credible for the reasons explained in this decision.")

by objective evidence of mental or cognitive abnormalities: "Although Dr. Van Hook identified mild impairment with regard to concentration, some weakness in remote recall, and limited social judgment about some matters, Dr. Van Hook noted no significant cognitive deficits and no abnormal thought processes…,"[143] *and see, e.g.*: "The record contains no evidence of formal mental health treatment to corroborate the allegations of poor comprehension and short attention span, and the record contains no education records to corroborate the allegations that the claimant required special education classes and has learning disabilities."[144] Dr. Van Hook also found that Plaintiff was possibly magnifying and/or embellishing symptoms.[145] The ALJ is entitled to weigh the evidence and find that the medical evidence is more persuasive than testimony.[146] Aside from Dr. Van Hook's report and that of the state agency psychological consultant, there is a lack of any other objective medical documentation regarding Plaintiff's claims of a learning disability.

Next, Plaintiff argues that the issue of whether Plaintiff is "able" to engage in activities, which was considered by the ALJ, is not the same as Plaintiff having demonstrated adaptability.[147] However, Dr. Van Hook's report, which the ALJ considered, indicates that Plaintiff's overall level of adaptation, based on Plaintiff's own self-reporting, was "fair to marginal."[148] Moreover, it is Plaintiff's burden to prove his adaptive deficits,[149] and Plaintiff did not provide any independent objective evidence to satisfy this burden.[150]

---

[143] AR p. 33, and further noting that Dr. Young's records did not indicate that Plaintiff had difficulty providing a history or communicating and he also observed few abnormalities regarding Plaintiff's mental status. AR pp. 33-34.
[144] AR p. 34. *See also* AR p. 36: "As previously noted, the record contains no evidence of mental health treatment, nor does it contain objective findings suggestive of significant limitations with regard to the claimant's mental functioning."
[145] AR pp. 262-64.
[146] *Falco,* 27 F.3d at 164, and n. 18: "We do not sit in *de novo* review nor may we re-weigh the evidence. *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir. 1988). The ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing."
[147] R. Doc. 12, p. 12 and R. Doc. 17, pp. 3-5.
[148] AR p. 263-64.
[149] The burden rests upon the claimant throughout the first four steps of the five-step process to prove disability. *See e.g., Muse*, 925 F.2d at 789.
[150] AR pp. 33-34.

24

For the foregoing reasons, even if the ALJ committed legal error by not articulating his analysis for the determination at step 3 of the sequential analysis, such error did not cast into doubt that substantial evidence supports the ALJ's conclusion that Plaintiff's mental impairment does not meet Listing 12.05C because the evidence establishes that his adaptive functioning is adequate.[151]

## C. Substantial Evidence Supports the ALJ's Determination of Plaintiff's Residual Functional Capacity

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."[152] The ALJ's RFC determination can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected.[153] A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.[154] The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision.[155] Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision.[156]

### i. The ALJ Is Entitled To Consider All of the Evidence of Record in Determining Plaintiff's RFC

In his opinion, the ALJ stated: "After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform the full range of sedentary work as

---

[151] *Hurst*, 639 F. App'x at 1021 (citations omitted).
[152] *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).
[153] *Falco*, 27 F.3d at 163-64.
[154] *Johnson*, 864 F.2d at 343; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).
[155] *Leggett*, 67 F.3d at 564.
[156] *Johnson*, 864 F.2d at 343-44.

defined in 20 C.F.R. 416.967(a)." In making that decision, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence…The undersigned has also considered opinion evidence…."[157]

Plaintiff argues that the ALJ erred in not taking his mental impairment into account when the ALJ found Plaintiff has the RFC to perform the full range of sedentary work. Plaintiff contends that, if his mental functional limitations had been appropriately considered in the formulation of the RFC, a finding of disability "based upon Plaintiff's inability to meet the mental functional requirements of substantial gainful activity (SGA) would have been established."[158] Plaintiff argues that the objective mental functioning assessment of Plaintiff, in the form of the WAIS-IV Intelligence Test and the subtests thereto, *i.e.*, Plaintiff's IQ score, was ignored by the ALJ, including the findings that Plaintiff has problems with verbal comprehension and reasoning and his working memory and processing skills are considered "Extremely Low." Plaintiff argues that his IQ score of 67 "signifies a severe mental limitation in learning, understanding, remembering and carrying out learned instructions."[159] Thus, according to Plaintiff, the ALJ erred in utilizing the "Grid Rules" at step 5 of the sequential analysis, when an important non-exertional mental impairment was shown to exist.[160]

While the ALJ did not specifically mention Plaintiff's IQ scores when determining Plaintiff's RFC, the ALJ was not required to accept Plaintiff's IQ score.[161] Moreover, the ALJ considered the evidence of Plaintiff's mental impairment but did not find the testimony regarding

---

[157] AR p. 32.
[158] R. Doc. 12, p. 14.
[159] R. Doc. 12, p. 15.
[160] R. Doc. 12, pp. 15-16.
[161] *See Ledet*, 2016 WL 3079026, at *8 (citations omitted) *and Winn*, 2013 WL 5507289, at *11 ("As with any medical evidence, the ALJ is not 'required to accept a claimant's IQ score. Rather, the ALJ should examine the record to determine whether the proffered IQ score is reliable-that is, consistent with the claimant's daily activities and behavior. An ALJ may reject IQ scores if they are inconsistent with the record.'") (internal citations omitted). *See also Muse*, 925 F.2d at 790 ("An ALJ may make factual determinations on the validity of I.Q. tests.").

the severity credible. The ALJ considered the testimony about Plaintiff dropping out of school and being married with a child, his ability to perform the activities of daily living discussed above, his inability to drive or leave home because he "loses track" of what he has to do, and his "business" being handled by his mother. The ALJ considered the testimony about Plaintiff's heart surgery at one year of age and Plaintiff's chest pain due to Tetralogy of Fallot. The ALJ noted inconsistency in Plaintiff's testimony about his symptoms arising from his heart condition.[162]

The ALJ specifically found that Plaintiff's claims of limited ability to manage his affairs or function independently in public were not credible because those allegations were not supported by objective evidence of mental or cognitive abnormalities. Likewise, the ALJ found that Plaintiff's claims of poor comprehension and short attention span were not supported by evidence of formal mental health treatment or special education classes.[163] The ALJ "has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence."[164] Furthermore, the ALJ is entitled to review all of the evidence of record, including medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and effects of symptoms,[165] not just Plaintiff's IQ score.

Next, while Plaintiff characterizes his mental impairment as "severe," Dr. Van Hook placed Plaintiff in the "mild range of intellectual disabilities" and diagnosed "borderline intellectual

---

[162] AR pp. 32-33 *citing* AR pp. 41-81.
[163] AR pp. 33-34 *and see* AR p. 35, declining to give great weight to Dr. Van Hook's opinion as a whole because Dr. Van Hook attributed limitations to Plaintiff's history of learning problems and Plaintiff's reports of anxiety, which indicated those opinions were based on Plaintiff's subjective complaints and self-reports rather than on objective findings, and also declining to give great weight to the opinion of the state agency psychological consultant to the extent she assessed "severe" mental impairments, due to the lack of supporting documentation when compared to Plaintiff's ability to perform a variety of activities. AR pp. 35-36.
[164] *Gonzales v. Astrue*, 231 F. App'x 322, 324, 2007 WL 1454457, *2 (5th Cir. 2007) (citations omitted).
[165] SSR 96-8p.

functioning."[166] While Plaintiff may have below-average intelligence, "below-average intelligence does not alone constitute a non-exertional impairment," and, "When the claimant suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform."[167] The ALJ's findings, including his decision to not incorporate mental limitations into the RFC findings is supported by substantial evidence.[168] Accordingly, this assignment of error has no merit.

### ii. Substantial Evidence Supports the ALJ's Findings that Plaintiff Can Perform Sedentary Work

To determine Plaintiff's RFC in light of his heart condition, the ALJ considered the objective evidence proved by Dr. Young, which indicated that Plaintiff had heart surgery at one year of age; "a grade 2/6 systolic ejection murmur…and a 3/6 blowing early diastolic murmur;" an EKG that revealed "severe pulmonic regurgitation…mild tricuspid regurgitation…and mild right atrial enlargement;" moderate to severe right ventricular enlargement with normal systolic function…normal left ventricular systolic function;" as well as Dr. Young's diagnosis of Tetralogy of Fallot status-post complete repair with unrestricted pulmonary insufficiency and possible additional lung disease, for which he referred Plaintiff to a pulmonologist.[169] The ALJ found that the foregoing objective findings:

> …provide some support for the claimant's allegation that the [sic] experience chest pain and supports testimony that the claimant has shortness of breath at times. Accordingly, in light of evidence of pulmonary insufficiency associated with the claimant's status post repaired tetralogy of Fallot, the undersigned finds it reasonable that

---

[166] AR pp. 263-64.
[167] *See e.g., Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990) *citing* 20 C.F.R. § 404.1569 & Subpt. P, App. 2 and *Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir. 1987).
[168] The corresponding application of Medical-Vocational Rule 201.27 ("Grid Rules") at step 5 to find that Plaintiff is not disabled is discussed below.
[169] AR p. 34 *citing* AR pp. 268-83. The ALJ noted that were no pulmonary function tests in the record.

the claimant retains the residual functional capacity to perform sedentary exertional activity.[170]

The ALJ also found that Plaintiff's allegations regarding the severity and limiting effects of his cardiac impairment to not be fully credible because there was no opinion in the record that Plaintiff needed urgent surgical intervention, and significantly, Dr. Young's September 2015 analysis of Plaintiff's MRI revealed that Plaintiff's level of reported symptoms was out of proportion to his MRI findings, "as most people with these results are basically asymptomatic."[171] Moreover, in August and September 2015, Dr. Young suspected that Plaintiff's symptoms (*e.g.*, palpitations, syncope, and exercise intolerance) were not due to his heart condition but were anxiety-related and therefore referred Plaintiff for a psychological evaluation.[172] Plaintiff also testified at the hearing that sometimes his chest hurt when he got nervous or panicked.[173] Based on this evidence, the ALJ held that the evidence of record did not establish that Plaintiff required a more restrictive RFC.[174]

The ALJ considered the opinions of the state agency medical consultant who diagnosed a "light" RFC,[175] and Dr. Adeboye Francis, a consultative examiner. Dr. Francis examined Plaintiff in November 2014 and identified few abnormal physical findings. He opined that "Plaintiff is able to work at this time at the appropriate type job within [his] physical capabilities."[176] However, the ALJ found that Dr. Young's subsequent findings of pulmonary valve insufficiency and significant enlargement of the right ventricle provided support for Plaintiff's claims of shortness of breath and

---

[170] AR p. 34.
[171] AR p. 278.
[172] AR pp. 34-35 *citing* AR pp. 268-283. The ALJ noted that there were no records to establish that Plaintiff underwent a psychological evaluation.
[173] AR p. 80.
[174] AR p. 35.
[175] AR p. 35 *citing* AR p. 94.
[176] AR p. 35 *citing* AR p. 259. Dr. Francis found that Plaintiff could perform light to moderate exertional activities and could lift and carry 40 pounds, could bend, squat, stoop, crouch, kneel, crawl, etc., was able to operate foot pedals, and had no limitations on the use of his hands. *Id.*

a more restrictive RFC than "light," with greater limitations than those assessed by Dr. Francis.[177] The ALJ thus assessed an RFC for sedentary work.[178] The ALJ declined to give great weight to the non-exertional limitations assessed by Dr. Van Hook and the state agency psychological consultant to the extent they were based on Plaintiff's subjective reports and not supported by documentation of prior mental health treatment[179] or other objective evidence as explained previously.

At step 5, the ALJ considered the foregoing RFC involving exertional limitations and Plaintiff's lack of past relevant work, his age of 20 years, his high school education, his ability to communicate in English, and applied the Medical-Vocational Guidelines to determine that Plaintiff was not disabled as directed by Rule 201.27.[180]

The ALJ used the medical information in the record to determine Plaintiff's RFC for work. "Under the regulations and our case law, the determination of residual functional capacity is the sole responsibility of the ALJ."[181] Based on the foregoing, substantial evidence supports the ALJ's RFC determinations; specifically, the ALJ's determination regarding Plaintiff's ability to perform sedentary work.

## VI.     Conclusion

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record, considered as a whole, supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff is not disabled.

---

[177] AR p. 35.
[178] AR pp. 32, 34.
[179] *See e.g.*, *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) ("Here, substantial evidence supports the finding of the non-severity of Taylor's mental problems. A comprehensive medical exam revealed no evidence of Taylor's alleged mental health issues or any reason why mental problems would prevent him from engaging in gainful activity. In addition, the medical records showed that Taylor did not take any medications for his mental health complaints. He also failed to seek mental health care even after he was twice referred for mental health treatment at his request.").
[180] AR pp. 35-36.
[181] *Taylor*, 706 F.3d at 602–03, *citing Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995).

Accordingly, under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of the Social Security Administration denying the application for supplemental security income filed by plaintiff, Ivory A. Roberson, Jr., is **AFFIRMED** and this action is **DISMISSED**.

Signed in Baton Rouge, Louisiana, on March 29, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**